UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

**FILED**

MAR 2 3 2007

CLERK

SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

|  |  |  |
|---|---|---|
| TRAVIS SMILEY, | * | CIV. 05- 4094 |
| | * | |
| Plaintiff, | * | MEMORANDUM OPINION |
| | * | AND ORDER |
| vs. | * | |
| | * | |
| TROY PONTO, Unit Manager; | * | |
| RODNEY BROCKHOFT, Lt., Security; | * | |
| JOE D. MILLER, Lt., Special Security; | * | |
| DARYL R. SLYKHUIS, Deputy/Interim | * | |
| Warden; and DOUGLAS L. WEBER, | * | |
| Warden/Interim DOC Cabinet Secretary, | * | |
| Department of Corrections; all in their | * | |
| individual and official capacities, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Pending before the Court is Defendants' Motion for Summary Judgment. Doc. 44. For the reasons stated in this memorandum opinion, the motion is granted.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Travis Smiley was an inmate who was in the custody of the South Dakota Department of Corrections. He had been incarcerated at the South Dakota State Penitentiary in Sioux Falls since October 6, 2003. Although Plaintiff was serving a life sentence, after Defendants moved for summary judgment in this action, a state writ of habeas corpus was issued invalidating Plaintiff's criminal conviction, and Plaintiff was transferred to the custody of Minnehaha County. Plaintiff Smiley's current status is unknown to the Court.

Defendant Troy Ponto is employed as a unit manager at the South Dakota State Penitentiary. Defendant Rodney Brockhoft is employed as a lieutenant at the South Dakota State Penitentiary. Brockhoft is the Disciplinary Hearing Officer who conducted a disciplinary hearing involving Smiley on October 5, 2004. Defendant Joe Miller is employed as a lieutenant at the South Dakota State Penitentiary. Miller works in Special Security, and was in charge of the investigation into damage

to the design computer operated by Plaintiff Smiley and located in the license plate shop at the South Dakota State Penitentiary in September of 2004. Defendant Daryl Slykhuis is employed as the Deputy Warden at the South Dakota State Penitentiary in Sioux Falls. In September and October, 2004, Slykhuis was the Interim Warden. Defendant Douglas Weber is employed as the Warden at the South Dakota State Penitentiary in Sioux Falls. From September through November of 2004, Weber was the Interim Secretary of the South Dakota Department of Corrections.

Defendant Mike Holmes is employed by the Department of Corrections as the supervisor and the only non-inmate in the license plate shop. Holmes held that position in September of 2004. For a time, Plaintiff Smiley, who worked in technical support at Gateway Computer before his incarceration, was assigned to work at the license plate shop in the Prison Industries building at the South Dakota State Penitentiary. Plaintiff worked there from February 25, 2004, until September 23, 2004, operating the design computer, which is one of two computers used in the production of license plates. The design computer is not part of the State of South Dakota's network but is linked to one other computer in the license plate shop.

In September of 2004, Plaintiff Smiley reported problems with the design computer in the license plate shop. It was later determined that the hard drive had been erased, and the design computer subsequently required servicing and reprogramming.

Defendant Joe Miller began an investigation of the computer incident on September 23, 2004, and completed the investigation on September 30, 2004. Miller then wrote a disciplinary report for Plaintiff Smiley's violation of Prohibited Act 5-17, conduct which disrupts, which is a major disciplinary violation. Plaintiff Smiley was removed from his position in the license plate shop pending the outcome of the investigation. Based on the outcome of the investigation, Smiley lost his position in the license plate shop.

The disciplinary report was served on Smiley on September 30, 2004, at 3:50 p.m. A unit disciplinary committee hearing was conducted on October 1, 2004. Plaintiff Smiley disputed the charge, and the charge was referred to the disciplinary officer for further hearing. Plaintiff Smiley denies receiving advance written notice that a disciplinary hearing would be held, and denies being advised what his rights were concerning the hearing. However, both Plaintiff Smiley and Defendants have submitted the form advising Plaintiff of his rights before the Disciplinary Hearing Officer,

2

which form was signed by a staff member after the statement, "I PERSONALLY ADVISED THE INMATE OF THE ABOVE RIGHTS."

The disciplinary hearing was held on October 5, 2004, before Defendant Brockhoft, the disciplinary hearing officer. Rebecca Weaver, who served as Plaintiff Smiley's staff representative, spoke to Mike Holmes prior to the hearing. Plaintiff Smiley was allowed to call inmate witnesses and was allowed to testify. Plaintiff Smiley submitted written statements from the inmate witnesses at the hearing and Plaintiff Smiley testified on his own behalf. Defendant Brockhoft considered a written disciplinary report from Joe Miller and e-mails from Mike Holmes. Brockhoft concluded after the hearing that Plaintiff Smiley had committed Prohibited Act 5-17. Defendant Brockhoft imposed a sanction of disciplinary segregation of 30 days and restitution in the amount of $8,400. The State of South Dakota contracted with 3M to repair the hard drive to the design computer. 3M billed the State $8,400 for the services that it provided.

Plaintiff Smiley appeared before the Administrative Segregation Board which ordered his release back into the general population on October 19, 2004. Plaintiff Smiley also filed a grievance with the South Dakota State Penitientiary. The grievance and the appeal from the denial of the grievance were both denied. Plaintiff Smiley's appeals to the Warden and the Secretary of Corrections were also denied. The Secretary of Corrections determined that the $8400 would not be considered part of the disciplinary sanction but that Smiley would be liable for the $8400 in restituion pursuant to Department of Corrections Policy 1.3.C.11. - *Offender Obligations.*

Plaintiff Smiley then brought this action under 42 U.S.C. § 1983. In his complaint Plaintiff Smiley contends that Defendant Brockhoft violated Plaintiff Smiley's due process rights by denying Plaintiff Smiley the right to call staff, *i.e.*, Mike Holme to the disciplinary hearing, and by using "informationals" as evidence against Plaintiff Smiley without providing Plaintiff Smiley with copies or allowing Plaintiff Smiley to read the documents. Plaintiff Smiley further contends that the $8,400 in restitution constituted cruel and unusual punishment

Plaintiff Smiley contends that Defendant Ponto, by being involved in both the Unit Disciplinary Committee process and then later at Smiley's appeal, violated Plaintiff Smiley's due process rights. Plaintiff Smiley contends that Defendant Slykhuis' "blatant disregard to plaintiff's arguments in his disciplinary appeal" violated his due process rights under the Fifth and Sixth

3

Amendments. Plaintiff Smiley also contends that Defendant Ponto, Slykhuis and  Weber's "deliberate indifference to Plaintiff's disciplinary appeal and allowing the imposition of restitution" violated his rights under the Fifth, Eighth and Fourteenth Amendments.

Principles of Summary Judgment

In considering a motion for summary judgment, the Court asks the question whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).  "Once the motion for summary judgment is made and supported, it places an affirmative burden on the non-moving party to go beyond the pleadings and 'by affidavit or otherwise' designate 'specific facts showing that there is a genuine issue for trial.'" *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992) (quoting FED. R. CIV. P. 56(e)). "A plaintiff's verified  complaint is the equivalent of an affidavit for purposes of summary judgment, ... and a complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified complaint." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001) (citations omitted).  If the allegations in the verified complaint consist of nothing more than conclusory allegations, however, they are insufficient to overcome a summary judgment motion. *See Roberson v. Bradshaw*, 198 F.3d 645, 647 (8th Cir. 1999).

## WHETHER SMILEY'S DUE PROCESS RIGHTS WERE VIOLATED IN THE DISCIPLINARY PROCEEDINGS AGAINST HIM?

The Supreme Court has stated, "'(C)onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.'"*Wolff v. McDonnell*,  418 U.S. 539, 560 ( 1974) (quoting *Cafeteria and Restaurant Workers Union v. McElroy*, 367 U.S. 886, 895 (1961)).  The Supreme Court has also noted, "A prisoner may not entirely surrender his constitutional rights at the prison gates, . . . but certainly he leaves some of his liberties behind him." *Johnson v. California,* 543 U.S. 499, 529 n.3 (2005)(citations omitted).

In *Sandin v. Conner,*  515 U.S. 472 (1995), a prisoner brought a civil rights action

4

challenging imposition of disciplinary segregation for misconduct. The Supreme Court concluded that neither the prison regulation under which the prisoner was sentenced to 30 days' disciplinary segregation nor the due process clause afforded the prisoner the protected liberty interest that would entitle him to procedural protections before receiving the disciplinary segregation sanction. In reaching this conclusion the Court reasoned that the prisoner's case, though admittedly punitive, did not present a dramatic departure from the basic conditions of the prisoner's indeterminate sentence. *Sandin v. Conner,* 515 U.S. at 485. The Supreme Court further reasoned that the prisoner's case did not present a situation where the State's action would inevitably affect the duration of the prisoner's sentence. *Id.* at 487 . The Eighth Circuit Court of Appeals has also held that an inmate does not have a protected liberty interest in avoiding administrative and disciplinary segregation when these disciplinary sanctions do not impose an atypical and significant hardship when compared to the burdens of ordinary prison life. *See Davis v. Norris,* 2006 WL 2788620 (8th Cir. Sept. 28, 2006); *Wycoff v. Nichols*, 94 F.3d 1187 (8th Cir. 1996).

In this case Plaintiff Smiley's disciplinary segregation was terminated well before the original sentence of 30 days was served. Plaintiff Smiley has not presented any evidence that his disciplinary segregation was a dramatic departure from the basic conditions of his sentence. Nor has Plaintiff Smiley asserted that his disciplinary segregation affected the duration of his sentence. The imposition of disciplinary segregation in this case does not involve a protected liberty interest that would entitle Plaintiff Smiley to procedural protections before receiving the disciplinary segregation sanction.

The imposition of $8400 in restitution, however, raises the issue of whether there is a constitutionally protected property interest that requires procedural protections. This Court must consider whether the payment of the restitution is from prison wages or from outside sources. In *Hrbek v. Farrier,* an action by a prisoner in Iowa, the Eighth Circuit Court of Appeals held that there was no constitutional right to prison wages and any such compensation was by the grace of the state. 787 F.2d 414, 416 (8th Cir. 1986) (citing *Sigler v. Lowrie,* 404 F.2d 659, 661 (8th Cir. 1968)). In the *Hrbek* case, the Eighth Circuit noted that the Iowa Legislature had provided that both payment of a prisoner's wages and the deduction from such wages of an amount sufficient to pay all or part of the institutional costs taxed to such inmate were at the discretion of the director of the institution.

5

*Id.* at 416.

In South Dakota, state statute provides that disbursements shall be made from an inmate's institutional account to satisfy any obligation incurred while the inmate is under the jurisdiction of the Department of Corrections, "regardless of the source of the inmate's funds." S.D.C.L. 24-2-29[1] Although the inmate funds that come from prison wages may not be entitled to due process protections, the Eighth Circuit Court of Appeals has held that prisoners have a constitutionally protected property interest in money received from outside sources, such as from family and friends. *See Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996), *cited in Murray v. Dorsal*, 150 F.3d 814, 818-19 (8th Cir. 1998).

In *Mahers v. Halford*, inmates incarcerated by the Iowa Department of Corrections challenged a policy authorized deductions for restitution payments from all credits to an inmate's account, with an exemption for money given to an inmate for use for a specific purpose. Although the Eighth Circuit reversed the district court's decision enjoining the Iowa Corrections officials from withholding court ordered restitution deductions without providing an individualized predeprivation hearing and requiring officials to repay money that was previously deducted without a hearing, the Eighth Circuit did recognize that inmates have a property interest in money received from outside sources and thus, inmates are entitled to due process before they can be deprived of these monies. 76 F.3d at 964. In determining what process was due before money received from outside sources could be applied toward an inmate's restitution obligations, the Eighth Circuit looked at the factors

---

[1] SDCL § 24-2-29 provides:

Each inmate is liable for court-ordered fines, costs, fees, sanctions, and restitution and any obligation incurred while under the jurisdiction of the Department of Corrections including those provided for in §§ 24-2-28, 24- 7-3, 24-8-9, 24-11A-19, 24-15-11, 24-15A-24, and 23A-35B-4 and any other charge owed to the state. Disbursement shall be made from an inmate's institutional account to defray the inmate's obligation, regardless of the source of the inmate's funds, including moneys in the inmate's institutional account pursuant to § 24-2-5 and wages earned by the inmate pursuant to §§ 24-4-9, 24-7-3(3), 24-7-6, 24-8-8, and 24-11A-20.

set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), provides that a court should balance three factors when determining what process is due in a particular situation: 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedures; and 3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Although Plaintiff Smiley has an interest in his personal funds, the Eighth Circuit has recognized that inmates are not entitled to complete control over their money while in prison. *See Mahers v. Halford*, 76 F.3d at 954 (citing *Foster v. Hughes*, 979 F.2d 130 (8th Cir.1992) (inmates have no constitutional right to place their money in interest-bearing accounts)); *Blankenship v. Gunter*, 898 F.2d 625 (8th Cir.1990) (inmates can be constitutionally prohibited from using money in their prison accounts for religious donations). Further, an inmate is not absolutely deprived of the benefit of his money, when part of it is applied towards the inmate's restitution debt. *Mahers v. Halford*, 76 F.3d at 955.

Consideration of the risk of an erroneous deprivation of an inmate's property interest through the procedures used in this case , and the probable value of additional or substitute procedures, does not support Plaintiff Smiley's position that the procedures in place in his case were inadequate. Exhibit 4 to Plaintiff Smiley's June 20, 2005, affidavit demonstrates that he was given notice of the charges and notice of the hearing four days before it commenced. Plaintiff Smiley was also given the right to a staff representative and given the right to call a reasonable number of inmate witnesses. He was also allowed to and did testify in his own behalf.

Although Plaintiff Smiley complains that his staff representative at the hearing, Correctional Counselor Weaver, was not his representative of choice, there is no right to either retained or appointed counsel in disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 570 (1974).Although Plaintiff Smiley also complains of being unable to call Mike Holmes as a witness because of the prohibition against calling staff as witnesses, the right to present witnesses at a disciplinary hearing has always been limited by balancing the inmate's interest "against the needs of the prison." *See Wolff v. McDonnell*, 418 U.S. at 566; *See also Louis v. Department of*

7

*Correctional Servs. of Nebraska*, 437 F.3d 697, 701 (8th Cir. 2006)((refusal to allow inmates to call lab technicians as witnesses is justified by the prison's need to manage the prison environment and the productivity of the lab technicians). The contents of Mike Holmes' affidavit in support of Defendants' motion for summary judgment is not helpful to Plaintiff Smiley's position in the disciplinary matter, and Plaintiff Smiley has not demonstrated that Mike Holmes would have presented a more favorable account at the disciplinary hearing if Plaintiff Smiley had been allowed to call him. Considering all the facts of this case, including the prison's need to have staff available to perform their designated duties, this Court cannot say the refusal to allow Plaintiff Smiley to call Mike Holmes as a witness rendered the disciplinary procedures inadequate.

The fact that Defendant Ponto was involved in both the Unit Disciplinary Committee process and then later at Smiley's appeal is of no constitutional significance. Plaintiff Smiley has not presented a situation in which a prison official has sat in judgment on his own complaint in a disciplinary proceeding. *Cf. Diercks v. Durham*, 959 F.2d 710 (8th Cir. 1992).

The Supreme Court has held that when good time is to be lost or solitary confinement is to be imposed, a prisoner is entitled to advance written notice of the claimed violation, a written statement of fact findings, and a limited right to call witnesses and present documentary evidence. *Wolff v. McDonnell*, 418 U.S. 539 (1974). Plaintiff Smiley received these rights in the case at hand. Although Plaintiff Smiley contends that at the disciplinary hearing the hearing officer considered "informationals" as evidence against Plaintiff Smiley without providing Plaintiff Smiley with copies or allowing Plaintiff Smiley to read the documents, Plaintiff Smiley has not shown that the information exceeded the scope of the notice that was provided to him or that he was unable to address the substance of the "informationals." Also, even if , as Plaintiff Smiley contends, Plaintiff Smiley did not receive a copy of the disciplinary report within 24 hours of the offense as required under DOC policy, the violation of an institution's policy does not of itself constitute a constitutional violation. *See Falls v. Nesbitt*, 966 F.2d 375, 380 (8th Cir. 1992).

Plaintiff Smiley erroneously contends that the Warden and Secretary of Correction's "blatant disregard to plaintiff's arguments in his disciplinary appeal" is action that constitutes a constitutional violation. The findings of the disciplinary decision-maker must only be supported by "some evidence."*Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Determining whether this standard is

8

met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56; *See also, Louis* ,437 F.3d at 700. Evidence was presented at the disciplinary hearing that Plaintiff Smiley had been given a computer disc with orders on it, and that Plaintiff Smiley inserted the disk to his computer and a flashing screen was then seen, and that the flashing screen was consistent with the hard drive being erased. Also, evidence was presented that when Plaintiff Smiley returned the computer disc to Mike Holmes, the disc had a file on it when the disc should have been empty. Evidence was presented that when Mike Holmes loaded the disc on his computer, it began erasing files in the system. Finally, the 3M bill for providing services related to the erased hard drive was received as evidence. The findings from Plaintiff Smiley's disciplinary hearing are supported by some evidence.

Consideration of the state's interest in this matter does not support Plaintiff Smiley's position that the procedures in place in his case were inadequate. The administrative burden of providing inmates with the representatives of their choice and requiring any and all staff members called by an inmate to participate in an inmate disciplinary proceeding is not warranted, especially in consideration of all the other safeguards that were in place in Plaintiff Smiley's case. This Court will not second guess the penitentiary officials on their decisions with regard to these matters. After considering the *Mathews v. Eldridge* factors and the circumstances surrounding this case, this Court concludes that Plaintiff Smiley was afforded adequate due process in his disciplinary action.

## WHETHER PLAINTIFF SMILEY'S CONSTITUTIONAL CHALLENGE REGARDING THE RESTITUTION IS RIPE FOR REVIEW?

Plaintiff Smiley contends that the imposition of restitution is "subject to reasonable amounts," and that the restitution in his case is excessive and in violation of the Eighth Amendment to the United States Constitution. Plaintiff Smiley questions whether S.D.C.L. § 24-2-9,[2] which

---

[2]SDCL § 24-2-9 provides:
Any inmate violating the rules or institutional policies is subject to any one or more of the following disciplinary sanctions:

9

deals with disciplinary sanctions, allows for the imposition of restitution. The interim Secretary of the Department of Corrections, however, did not consider the $8,400 as part of the disciplinary sanction but held Smiley liable under DOC Policy 1.3.C.11 - *Offender Obligations*. This policy, which is attached to Defendants' Statement of Undisputed facts, lists the date the policy was signed as 12/29/04 and states that the policy's effective date is 2/1/2005. This policy is authorized under S.D.C.L. § 24-2-29[3], and provides that an inmate is required to reimburse the Department of Corrections for "[r]eplacement or repair costs of state property damaged or destroyed by an offender."

S.D.C.L. § 24-8-9[4] provides that disbursements from an inmate's account be prioritized so

(1) Withholding of statutory time for good conduct;
(2) Punitive confinement;
(3) Imposition of fines;
(4) Restriction of privileges;
(5) Loss of work or school privileges;
(6) Additional labor without compensation;
(7) Referral to various programs;
(8) Transfer to a more secure housing unit;
(9) Change in classification status.

No corporal punishment may be inflicted upon inmates in the penitentiary.

[3]S.D.C.L. § 24-2-29 provides:
 Each inmate is liable for court-ordered fines, costs, fees, sanctions, and restitution and any obligation incurred while under the jurisdiction of the Department of Corrections including those provided for in §§ 24-2-28, 24- 7-3, 24-8-9, 24-11A-19, 24-15-11, 24-15A-24, and 23A-35B-4 and any other charge owed to the state. Disbursement shall be made from an inmate's institutional account to defray the inmate's obligation, regardless of the source of the inmate's funds, including moneys in the inmate's institutional account pursuant to § 24-2-5 and wages earned by the inmate pursuant to §§ 24-4-9, 24-7-3(3), 24-7-6, 24-8-8, and 24-11A-20.

[4]S.D.C.L. § 24-8-9 provides:
The Department of Corrections shall place all earnings in the inmate's account and make

10

that payments on fines and restitution not occur until after disbursements are made for board and room, travel expenses and support of an inmate's legal dependents. Plaintiff Smiley has an outstanding child support obligation exceeding $64,000. The child support obligation must be satisfied before any amounts can be taken from Plaintiff Smiley's disbursement account to satisfy the $8,400 restitution obligation. [5] The details surrounding disbursement from Plaintiff's Smiley account, such as the percentage of the account affected, and the impact on Plaintiff Smiley from the disbursement are not clear from the record since no such disbursement has occurred or is imminent.

The ripeness doctrine is designed to prevent courts from entangling themselves in abstract disagreements over administrative policies and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the parties challenging the decision. *See National Park Hospitality Ass'n v. Department of the Interior,*

---

disbursements therefrom in the priority set forth below:

(1) The board and room charges of the inmate;

(2) Necessary travel expenses and other incidental expenses of the inmate related to the inmate's release program;

(3) Support of the inmate's legal dependents;

(4) Payments on fines and restitution;

(5) Payments of personal debts and obligations upon proper proof and at the discretion of the inmate;

(6) The balance, if any, to be retained in the inmate's account and paid to the inmate upon parole or discharge.

[5]Although Smiley had contended that $100.02 had been taken from his account and applied toward the $8,400 restitution. An affidavit from an accountant at the South Dakota State Penitentiary establishes, however, that pursuant to an accounting policy the restitution obligation was reported as $8,299.98, but that no money was taken from Plaintiff Smiley's account to satisfy the restitution obligation.

538 U.S. 803 (2003). In the case at hand, there is no factual record of an actual or imminent application of the policies in issue that can present the constitutional issues in "'clean-cut and concrete form." *See Renne v. Geary*, 501 U.S. 312, 322 (1991)(quoting *Rescue Army v. Municipal Court of Los Angeles*, 331 U.S. 549, 584 (1947)).Plaintiff's Smiley's constitutional challenge to the restitution policies is not ripe for adjudication and will be dismissed on this basis.

## WHETHER DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY?

The Defendants, all of whom have been sued in their individual capacities, contend that they are entitled to qualified immunity. "Qualified immunity shields state officials from civil liability when 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Doe v. Gooden,* 214 F.3d 952, 954 (8th Cir. 2000)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Hayes v. Long*, 72 F.3d 70, 72 (8th Cir. 1995). Where a defendant seeks immunity, a ruling should be made early in the case so the costs and expenses of trial may be avoided where qualified immunity is dispositive. *Saucier v. Katz*, 533 U.S. 194, 200 (2001).The first consideration in determining whether qualified immunity applies is as follows: "'Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [officials'] conduct violated a constitutional right?'" *Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir.2005)(quoting *Saucier v. Katz*, 533 U.S. at 201)).

This Court has determined Plaintiff Smiley did not suffer the deprivation of a constitutional right with regard to due process in Plaintiff Smiley's disciplinary process. With regard to Plaintiff Smiley's eighth amendment claim, which this Court has determined is not ripe for adjudication, the Court in viewing the evidence in the light most favorable to Plaintiff cannot conclude that Defendants violated clearly established statutory or constitutional rights of which a reasonable person would have known. The Defendants are therefore entitled to qualified immunity. Accordingly,

12

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Doc. 44) is granted.

Dated this _23rd_ day of March, 2007.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

By:_____ Deputy
    (SEAL)

13